**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| ROLLIE CANNON, individually, and on behalf of all others similarly situated, | |
| **Plaintiff,** | Case No.  25-CV-134 |
| | JURY TRIAL DEMANDED |
| v | CLASS ACTION |
| BLUE SKY CASINO, LLC d/b/a FRENCH LICK RESORT - CASINO, Defendant. | |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Rollie Cannon ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this Class and Collective Action Complaint against Blue Sky Casino, LLC d/b/a French Lick Resort - Casino ("Blue Sky" or "Defendant"), and hereby states and alleges as follows:

**INTRODUCTION**

1.      Plaintiff and all other similarly situated employees work or worked for Defendant, a casino and hotel resort located in French Lick, Indiana.

2.      Pursuant to its company-wide policies and procedures, Defendant failed to pay Plaintiff, and other similarly situated employees, the mandated federal minimum wage rate for all hours worked and overtime for all hours worked over 40 in a single workweek. First, Defendant's timeclock rounding policy, procedure, and practice is used in such a manner that it results, over a period of time, in the failure to compensate its employees properly for all time worked, resulting in minimum wage and overtime violations. Second, Defendant failed to properly inform its tipped employees of the required tip credit provisions prior to paying a sub-minimum direct cash wage and, as a result, Defendant may not claim a tip credit. Third, Defendant miscalculated its tipped employees' regular rate of pay for overtime purposes by paying one and one-half times the sub-

1

minimum direct cash wage (as opposed to the full minimum wage), which results in unpaid overtime compensation.

3.       Defendant's systemic violations of federal and state wage laws were willful.

4.       Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit as: (a) a collective action under the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201, *et seq*., to recover unpaid minimum and overtime wages owed to Plaintiff and all other similarly situated workers employed by Defendant; and (b) a Rule 23 class action under Indiana state law, including the Indiana Wage Payment Statute ("IWPS"), I.C. § 22-2-5-1, *et seq*.

5.       Additionally, Plaintiff alleges that Defendant violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., on two separate theories. Plaintiff also brings these claims under the Indiana Civil Rights Law ("ICRC"), I.C. § 22-9-2-1. First, as described further below, Defendant discriminated, and continues to discriminate, against its older workers by systematically denying them promotions and giving those promotions to younger employees. Defendant engages in an effort to correct what it perceives as a skew toward older employees in its workforce. As a part of that effort, Defendant attempts to retain its younger workers by promoting them over older workers, who are equally or better qualified for positions. Defendant thus routinely denies older workers, including Plaintiff, promotions on the basis of their age. Such discriminatory personnel practices constitute unlawful discrimination under the ADEA and the ICRC. Second, Defendant's pattern and practice of enforcing step-up discipline is discriminatorily enforced only against older workers, in violation of the ADEA and the ICRC. Plaintiff will testify that he, and at least *three other employees*, all forty (40) years old or older, have been terminated by Defendant since August 2024 for alleged policy violations that were never enforced against younger employees, demonstrating age discrimination.

6. Plaintiff brings these ADEA claims on behalf of himself and similarly situated Blue Sky employees who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

## JURISDICTION AND VENUE

7. Federal question jurisdiction over the FLSA and ADEA claims of Plaintiff and all others similarly situated is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8. Supplemental jurisdiction over the state law claims of Plaintiff and all others similarly situated is based on 28 U.S.C. § 1367, in that the state law claims are so related to the FLSA and the ADEA claims that they form part of the same case or controversy.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

10. Plaintiff is forty-eight (48) years old and is a resident of Celestine, Indiana (Dubois County). At the time of recent events which are identified herein, Plaintiff was a resident of Paoli, Orange County, Indiana. From approximately October 16, 2006, through August 2, 2024, Defendant employed Plaintiff at its casino property located at 8670 West State Road 56, French Lick, Indiana 47432, until Defendant terminated Plaintiff for discriminatory reasons related to his age. During his employment, Plaintiff worked as a Table Games Dealer, which is a tipped, hourly, non-exempt position, and a Table Games Supervisor, which is also an hourly, non-exempt position. Plaintiff's Consent to Be a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit 1.

11. Defendant is a limited liability company organized under the laws of the State of Indiana. Defendant is registered to do business and does conduct business in the State of Indiana. Specifically, Defendant operates a 3,200-acre property located in French Lick, Brown County,

Indiana, which consists of a casino and sportsbook, three separate hotels, more than a dozen restaurants, three golf courses, two spas and a 2,500-seat concert hall.

12.    At all relevant times, Defendant is or has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

13.    At all relevant times, Defendant employed Plaintiff, and all other similarly situated employees.

14.    At all times relevant to this action, Defendant acted by and through its agents, servants, and employees, each of whom always acted relevant herein in the course and scope of their employment with and for Defendant.

15.    Plaintiff and all similarly situated employees are non-exempt, hourly employees who work or worked for Defendant within the respective limitations periods.

16.    Defendant's registered agent is Corporation Service Company and Defendant may be served at 135 N. Pennsylvania St., Ste. 1610, Indianapolis, Marion County, Indiana 46204.

## OVERVIEW OF PLAINTIFF'S CLAIMS

### Facts Common to All Counts

17.    Plaintiff re-alleges the allegations set forth above.

18.    Defendant is a casino-resort which employs more than 500 hourly, non-exempt workers at its premises in French Lick, Indiana.

19.    The hourly, non-exempt employees—including Plaintiff—which make up the classes and collectives in this complaint work throughout the hotel resort, including in the casino

4

as Table Games Dealers, Table Games Supervisors, Slot Attendants, "Cage" (aka cash out) Attendants, and Food Service workers.

20.     All of the Table Game Dealers, Slot Attendants, Cage Attendants, Food Service workers, and certain other hotel resort employees are hourly, non-exempt, tipped employees.

21.     Table Games Supervisors and certain other hotel resort employees are hourly, non-exempt employees, untipped employees.

22.     Defendant utilizes a computerized system which tracks the exact time (by the minute) any hourly employee clocks in and clocks out of work.

23.     Defendant utilizes an extensive surveillance system which records the actions of all employees and patrons, virtually 24/7, as a casino.

24.     In other words, Defendant is able to accurately track the work performed by every hourly, non-exempt employee, virtually 24/7, through its extensive video and audio monitoring systems and minute-by-minute attendance clocks.

25.     However, in attempt to circumvent Indiana's clear wage and hour laws and the FLSA, Defendant knowingly and purposefully chooses to use an outdated rounding clock in, clock out scheme which results in the systemic underpayment of its hourly, non-exempt workforce.

26.     Defendant maintains a disciplinary policy for all hourly, non-exempt employees, including Plaintiff, who fail to timely clock in or clock out of their work shifts.

27.     If an employee receives too many "discipline points" for violating Defendant's timeclock policy, the employee, including Plaintiff, is and was subject to a step-up disciplinary scheme that may ultimately conclude in termination.

28.     During Plaintiff's 18-year tenure working for the Defendant, he was subject to discipline relating to Defendant's perceived attendance policy violations.

29.    Defendant's wage and hour practices caused Defendant and those similarly situated to him to lose out on: (a) accurate pay for straight time work; (b) accurate overtime pay; and/or (c) accurate tip credit pay, including tip-credit overtime pay.

30.    Additionally, Defendant has a policy and practice of targeting older workers—forty (40) years old or older—which fails to promote older workers and disciplines them more harshly than it does its younger workers, creating an inference of age discrimination.

31.    Plaintiff will testify that his former supervisor told him verbatim that "you're all being targeted"[1] and that he was told to "keep track of anyone who had 'time in' [because] you all have been there too long."

32.    Plaintiff will testify that he reasonably interpreted this message to mean that he, and other similarly situated workers who were forty (40) years old or older, were being targeted by Defendant for termination.

33.    Defendant terminated Plaintiff on August 2, 2024, due to his age, in violation of the ADEA and the ICRC.

34.    Defendant terminated at least three (3) individuals over the age of forty (40), *in addition to Plaintiff*, for pretextual reasons disguised as age discrimination within mere days of Plaintiff's termination.

35.    Plaintiff, and all other similarly situated workers, suffered from Defendant's target of forty (years) old or older workers in violation of the ADEA and Indiana state law, and from Defendant's patently illegal wage and hour schemes in violation of the FLSA and Indiana state law.

36.    Plaintiff mitigated his damages.

---

[1]    Meaning older workers.

37.    Plaintiff applied for and was hired by another casino soon after Defendant's termination. Plaintiff worked in another casino as a dealer for approximately three (3) months until he was forced to resign due to that casino's policy permitting smoking. Smoking aggravates Plaintiff's pre-existing medical conditions.

38.    Plaintiff applied for re-hire at French Lick Casino to resume his positions as Table Games Dealer and Table Games Supervisor.

39.    Plaintiff's application for re-hire remains pending and undetermined.

### Unlawful Rounding Violations

40.    Defendant uses a rounding system in computing payroll which rounds to the closest 15-minute interval.

41.    For example, an employee who clocks in between 7:53 a.m. and 8:07 a.m. will be treated by Defendant's payroll computations as having clocked in at 8:00 a.m.

42.    Defendant utilizes the same rounding system for clock outs.

43.    For example, an employee who clocks out between 5:08 p.m. and 5:22 p.m. will be treated by Defendant's payroll computations as having clocked out at 5:15 p.m.

44.    Pursuant to Defendant's policies, Plaintiff and all similarly situated employees are subject to discipline if they clock in when they truly begin working—approximately 15 minutes prior to the start of their scheduled shifts.

45.    Defendant communicated these policies to Plaintiff on multiple occasions, by its agents, Plaintiff's supervisors.

46.    Specifically, Plaintiff will testify that Defendant told him on numerous occasions that under no circumstances was he, or any other employee similarly situated, to clock in at the

actual time they started working or he would be subject to personnel "discipline points" which are tracked by Defendant and relied upon when making employment decisions.

47.    If an employee clocks in 8 minutes or more prior to the start of their shift, Defendant would artificially reduce the time on the employee's time stub and reset the employee's start time to the top of the hour. Defendant also charged disciplinary points to the employee, for the alleged time clock violation.

48.    Defendant issued these punishments even though the employees worked during this time, and should have been compensated.

49.    Viewed in a vacuum, the rounding system utilized by Defendant appears to neither favor Defendant nor its employees as Defendant utilizes the same rounding system when an employee clocks in or out.

50.    Defendant's disciplinary policy alters the seemingly neutral rounding system in a manner which transforms Defendant's rounding system into a system that is substantially rigged in Defendant's favor. As a result, Plaintiff and similarly situated employees are not able to benefit from Defendant's rounding system; instead, the rounding system results, over a period of time, in the failure to pay Plaintiff and similarly situated employees for all hours worked.

51.    Per Defendant's rounding system, none of the pre-shift work (up to 7 minutes per day) is paid as Defendant rounds this time to the next 15-minute interval, the employees' official start time.

52.    Accordingly, at the start of an employee's shift, Defendant's rounding system is rigged in favor of Defendant because Defendant utilizes its attendance and/or disciplinary policies to ensure that, most of the time, the rounding which occurs at the start of the shift decreases the amount of compensable time Defendant pays its employees.

53.    Moreover, Plaintiff and all similarly situated employees, at the end of the day, are required to clock out no more than 7 minutes after the end of their shift.

54.    Pursuant to Defendant's policies, Plaintiff and all similarly situated employees may only clock out when authorized by their supervisor.

55.    Pursuant to Defendant's policies, there is typically a delay in releasing first shift workers from the start of second shift workers.

56.    In other words, first shift workers must wait for second shift workers before first shift workers are released from their stations to clock out (this policy is hereinafter known as "First Shift Layover").

57.    Pursuant to Defendant's policies, First Shift Layover workers, including Plaintiff, are not compensated for the time they actually worked past the conclusion of their scheduled shift, and are subject to discipline via "discipline points" if they fail to clock out on time.

58.    Plaintiff will testify that Defendant reduced his pay on more-than-one occasion and that he received "discipline points" when he failed to clock out at the time his shift was scheduled to end, even though he worked past this time as First Shift Layover worker.

59.    Accordingly, at the end of an employee's shift, Defendant's rounding system is rigged in favor of Defendant because the rounding which occurs at the end of their shift decreases the amount of compensable time Defendant pays its employees. Because of this, Plaintiff and all similarly situated employees are unable to take advantage of the rounding system because they cannot decide to leave prior to the conclusion of their shift, as discussed above.

60.    In sum, Defendant's timeclock rounding policy, procedure, and practice is used in such a manner that it results, over a period of time, in the failure to compensate its employees properly for all the time they actually worked, including overtime wages.

61.     Defendant has no good faith basis to use such a rigged rounding system as its time clocks record the actual clock in and clock out times to at least a one-minute accuracy. Defendant has complete knowledge of all hours worked by Plaintiff and all similarly situated employees.

62.     Defendant is also a casino with sophisticated surveillance equipment in the entirety of its premises. Defendant can and does track when employees are actually working.

63.     Defendant's failure to pay this unpaid time results in Plaintiff and all similarly situated employees being regularly denied proper compensation under the FLSA and Indiana state law.

64.     Throughout Plaintiff's employment as a Table Games Dealer, he was paid a sub-minimum direct cash wage for every hour worked. Thus, during each workweek in which Defendant did not pay him for all hours worked due to its timeclock rounding policy, Plaintiff's regular rate of pay fell below the requisite federal minimum wage ($7.25/hour) for tipped employees. Because the amount Plaintiff was paid during each of those workweeks divided by the number of hours he actually worked resulted in an amount less than the statutory requirement, Defendant violated the federal minimum wage requirements.

65.     During those workweeks and others, Defendant's timeclock rounding policy caused Plaintiff and all similarly situated employees' wages to fall below the requisite federal minimum wage and/or caused them to incur overtime for which they were not compensated (for all hours worked over 40 in a single workweek).

**Unlawful Overtime Calculations – Blended Rate**

66.     Indiana state law and the FLSA require employers accurately track employees overtime hours and pay them a one and one-half times premium on their respective hourly rate for all time over 40 hours in one week that the employee worked. *See generally*, 29 U.S.C. § 201,

*et seq.*; I.C. § 22-2-5-1, *et seq.*

67.     As discussed above, part of Plaintiff's work for Defendant included work as an hourly, non-exempt Table Games Supervisor.

68.     In this role, Plaintiff, as well as those similarly situated to him, were likewise required to adhere to Defendant's rounding clock. In any given week it was not uncommon for Plaintiff to work part of his 40 hours as a Table Games Dealer earning a tipped, subminimum wage (discussed above) and also work as a Table Games Supervisor, earning approximately $28.90 per hour.

69.     Under the FLSA, overtime for employees who perform work at different rates must be calculated according to a "blended" rate, that is, a rate not less than one- and one-half times the weighted average of all the different rates used during that work week.

70.     In other cases, employers may use a different overtime computation rate (instead of the average blended rate) when the employee and the employer enter a knowing and enforceable agreement contracting to a different rate.

71.     Employers can only take advantage of this exception, if (1) the employee performs two or more different kinds of work at different straight time hourly rates, and (2) the determined overtime rate is not less than one- and one-half times the bona fide rates that apply to the same work when performed during non-overtime hours.  See 29 C.F.R. § 778.419.

72.     Defendant did not have an agreement with Plaintiff regarding a specified blended overtime rate, and instead arbitrarily determined Plaintiff's overtime rate based on unknown factors.

73.     Defendant's timeclock rounding policy therefore caused Plaintiff and all similarly situated employees' blended wages to fall below the requisite weighted wage and caused them to

incur overtime for which they were not compensated (for all hours worked over 40 in a single workweek) at the correct weighted rate.

### **Entitlement to the Tip Credit – Failure to Give Notice**

74.     An employer may, in certain circumstances, take a "tip credit" toward its minimum wage obligations for tipped employees. Pursuant to the explicit language of the FLSA, a tip credit may not be taken "with respect to any tipped employee unless such employee has been informed by the employer of the provisions of [29 U.S.C. § 203(m)], and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2).

75.     The Department of Labor's interpreting regulations concerning Section 3(m) provide as follows:

> [A]n employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: [1] The amount of the cash wage that is to be paid to the tipped employee by the employer; [2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; [3] that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and [4] that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59(b).

76.     While Defendant employs Plaintiff and other similarly situated tipped employees by paying a sub-minimum direct cash wage, it failed to properly notify them of the tip credit requirements of the FLSA.

77.     Specifically, Plaintiff and other similarly situated tipped employees are not informed, in advance of Defendant's use of the tip credit, of: (1) the additional amount by which

the wages of the tipped employee are increased on account of the tip credit claimed by Defendant, which amount may not exceed the value of the tips actually received by the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

78.     Because Defendant failed to properly inform Plaintiff and other similarly situated tipped employees of the required tip credit provisions, Defendant willfully violated federal law by failing and refusing to pay all minimum wages due and owing.

**Miscalculated Regular Rate for Tipped Employees**

79.     The FLSA requires that employees receive overtime pay at a rate not less than one and one-half times the regular rate at which they are employed for all hours worked over 40 in a single workweek.

80.     The FLSA permits an employer to take a "tip credit" toward its minimum wage obligations for tipped employees equal to the difference between the required cash wage (which must be at least $2.13 under federal law) and the applicable federal or state minimum wage.

81.     However, where the employer takes the tip credit, overtime should be calculated on the full minimum wage, not the sub-minimum direct hourly wage payment. The employer may not take a larger tip credit for an overtime hour than for a straight time hour.

82.     In addition, "where a higher minimum wage than that set in the [FLSA] is applicable to an employee by virtue of ... other legislation, the regular rate of the employee ... cannot be lower than such applicable minimum, for the words 'regular rate at which he is

employed' ... must be construed to mean the regular rate at which he is lawfully employed." 29 C.F.R. § 778.5.

83.    Federal regulations provide that "a tipped employee's regular rate of pay includes the amount of tip credit taken by the employer ... Any tips received by the employee in excess of the tip credit need not be included in the regular rate." 29 C.F.R. § 531.60.

84.    In calculating Plaintiff's and other similarly situated employees' overtime pay, Defendant first subtracted the tip credit from the prevailing federal or state minimum wage. In other words, Defendant calculated the overtime rate by multiplying one and one-half times the sub-minimum direct cash wage being earned. As a result, Plaintiff's and other similarly situated employees' overtime pay was not based on the proper regular rate of pay.

85.    For example, on his paycheck dated January 12, 2024 (pay date), Defendant paid Plaintiff a direct cash wage of $7.20 per hour. During that pay period, Plaintiff received an overtime direct cash wage of $8.9969 per hour, for 8.25 hours of overtime worked. In violation of the FLSA, Defendant calculated the overtime rate on the sub-minimum direct cash wage payment, and not on the full minimum wage. Plaintiff's proper overtime rate should have been $10.875 per hour ($7.25 per hour times one and one-half) if Defendant was not entitled to utilize a tip credit (which Plaintiff asserts is not applicable given the failure to comply with Section 3(m) of the FLSA), or $10.825 per hour ($10.875 per hour minus a tip credit of $0.05) if Defendant was entitled to utilize a tip credit (which Plaintiff contests and is Defendant's burden to prove). Either way, Plaintiff's overtime pay was not based on the proper regular rate of pay.

86.    In doing so, Defendant failed to pay Plaintiff and all other similarly situated employees the proper overtime pay as required under federal law.

**ADEA/ICRC**

87.    Defendant engages in a companywide effort to shift its personnel focus to younger employees at the detriment of older employees, openly espousing an aggressive strategy of hiring and retaining younger employees while terminating older employees.

88.    As a part of its effort to shift to younger (and cheaper) workers, Defendant directed its managers and supervisors to watch older employees and to strictly enforce company policies against them. This policy resulted in the disproportionate reprimand of older employees, subjecting them to termination, and thereby opening positions to hire younger workers.

89.    Defendant's companywide age bias extended beyond the discriminatory hiring practices detailed in the actions above. Defendant also systematically favors younger employees for promotions over well-qualified, older employees.

90.    For example, Defendant granted younger employees with better work privileges—like the opportunity to work days instead of nights, assigning younger employees to games that allowed them to be seated, versus games which required full-shift standing, and the like.

91.    Plaintiff fell victim to Defendant's companywide age bias. Plaintiff worked for Defendant since approximately October 16, 2006, until his termination on August 2, 2024. At the time of his termination, Plaintiff held the positions of Table Games Supervisor and Table Games Dealer.

92.    In and around 2023, Plaintiff applied for a new position of Dealer Training Tables that was a promotion from his current position which would have included a raise in Plaintiff's hourly compensation. Defendant awarded Plaintiff the position and Plaintiff informed Defendant that he would accept the promotion. Plaintiff performed his duties as a Dealer Training Tables for

four (4) weeks. After Plaintiff began performing his new job duties, Defendant rescinded his pay raise.

93.    Plaintiff approached one of Defendant's directors regarding the denial of the pay increase, and Plaintiff was told by said director that Defendant would not pay Plaintiff the increased rate. When Plaintiff refused to continue in the position without the pay raise, Plaintiff was returned to his prior position, and the promotion was given to a salaried employee (meaning the position was filled at a significantly reduced rate of pay compared to what Defendant would have paid Plaintiff if it didn't renege on the new wage amount).

94.    During his time working for Defendant, Plaintiff observed other older employees be passed over for promotions in favor of less-qualified, younger employees. Additionally, Plaintiff has observed Defendant push to increase its focus on younger employees, both in terms of hiring and in terms of promotion.

95.    Moreover, Plaintiff observed older employees being terminated for infractions that were overlooked when committed by younger employees.

96.    One of Plaintiff's friends and former coworkers of over 15 years was terminated one month after Plaintiff.

97.    Plaintiff will testify that he witnessed Defendant terminate multiple older workers, like his friend, due to alleged violations of the attendance policy point system, while he witnessed younger employees with *more* attendance points, be retained.

98.    Prior to his termination, a former manager told Plaintiff that Defendant had a policy to look for any employees who were older and had been at the company for a long period of time so that they could be terminated, as those employees were paid at considerably higher rates than younger employees. As a result, older employees had a "target on them" and that Plaintiff and other

16

older employees should "watch out" for committing infractions as they would be terminated at the earliest opportunity that Defendant could find.

99.     In August 2024, Plaintiff's partner (also employed by Defendant at the time, but now also formerly employed) was gifted a room at one of Defendant's hotels to take her grandchildren swimming and out to eat at one of Defendant's restaurants. The person who gifted the room was a family friend that Plaintiff's partner had known since high school.

100.     Plaintiff met his partner and the children at the hotel, took them to the pool and arcade, and then left the premises. Plaintiff did not stay at the hotel. He was on the property for about two hours.

101.     The next day, Defendant terminated Plaintiff's employment. Defendant told Plaintiff that his termination was caused by an alleged violation of a fraternization policy and accepted gifts which constituted a conflict of interest, even though there was no such fraternization policy, and he did not accept any gifts. And despite the fact that younger employees fraternized with customers and received gifts from customers without being reprimanded, subject to step-up discipline, or terminated.

102.     Plaintiff thereafter filed a charge of discrimination with the EEOC and the Indiana Civil Rights Commission on September 17, 2024, within 180 days from the adverse employment action. See **Charge, Exhibit 2**.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

103.     Plaintiff re-alleges the allegations set forth above.

104.     Plaintiff brings Count I, the FLSA claim arising out of Defendant's unlawful timeclock rounding policy, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following collective action class:

**COUNT I - FLSA Timeclock Rounding Collective**

All persons employed by Defendant in an hourly position during the relevant period.

105.    At present, the relevant period includes the three-year period prior to the filing of the Class and Collective Action Complaint and extends forward to the present. The collective action class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

106.    Plaintiff brings Count II, the FLSA claim arising out of Defendant's tip credit notification policy, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following collective action class:

**COUNT II - FLSA Unlawful Tip Credit Collective**

All persons employed by Defendant during the relevant period and paid a direct cash wage of less than $7.25 per hour.

107.    At present, the relevant period includes the three-year period prior to the filing of the Class and Collective Action Complaint and extends forward to the present. The collective action class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

108.    Plaintiff brings Count III, the FLSA claim arising out of Defendant's regular rate miscalculation policy resulting in unpaid overtime wages, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following collective action class:

---

**COUNT III - FLSA Miscalculated Regular Rate Collective**

All persons employed by Defendant and paid a direct cash wage of less than $7.25 per hour who worked more than 40 hours in any workweek during the relevant period.

---

109.    At present, the relevant period includes the three-year period prior to the filing of this Class and Collective Action Complaint and extends forward to the present. The collective action class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

110.    Plaintiff brings Count IV, the FLSA claim arising out of Defendant's miscalculated blended rate for employees paid at more than one rate, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself individually and the following collective action class:

---

**COUNT IV - FLSA Miscalculated Blended Rate Collective**

All persons employed by Defendant who were employed at two or more hourly rates, who worked more than 40 hours in any workweek during the relevant period and were paid a direct cash wage less than the weighted average of the two rates per hour.

---

111.    At present, the relevant period includes the three-year period prior to the filing of

this Class and Collective Action Complaint and extends forward to the present. The collective action class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

112.    Plaintiff brings Count V, the ADEA claim arising out of Defendant's age discrimination, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following collective action class:

---

### COUNT V - ADEA Collective

All persons employed by Defendant aged forty (40) years old or older who were denied or prevented from obtaining advancement or promotions that were instead given to employees aged younger than 40.

---

113.    At present, the relevant period includes the three-year period prior to the filing of this Class and Collective Action Complaint and extends forward to the present. The collective action class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

114.    Plaintiff brings Count VI, the ADEA claim arising out of Defendant's age discrimination, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following collective action class:

---

### COUNT VI - ADEA Collective

All persons employed by Defendant aged forty (40) years old or older who suffered an adverse employment action because of their age.

---

115.    At present, the relevant period includes the three-year period prior to the filing of this Class and Collective Action Complaint and extends forward to the present. The collective

action class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

116.    Plaintiff's FLSA claims (Counts I-IV) and ADEA claim (Counts V-VI) may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

117.    Plaintiff, individually and on behalf of all others similarly situated, seeks relief on a collective basis challenging Defendant's above-described FLSA and ADEA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendant's records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

118.    Plaintiff brings Count VII, the IWPS claim for minimum wage violations arising out of Defendant's unlawful timeclock rounding policy, as a class action under Fed. R. Civ. P. 23, on behalf of himself and the following class:

> **COUNT VII - IWPS Unpaid Minimum Wage Class**
>
> All persons employed by Defendant in an hourly position during the relevant period.

119.    At present, the relevant period includes the two-year period prior to the filing of the Class and Collective Action Complaint and extends forward to the present. The class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

120.    Plaintiff brings Count VIII, the IWPS claim arising out of Defendant's unlawful tip credit notification policy, as a class action under Fed. R. Civ. P. 23, on behalf of himself and the following class:

**COUNT VIII - IWPS Unlawful Tip Credit Class**

All persons employed by Defendant during the relevant period and paid a direct cash wage of less than $7.25 per hour.

121.    At present, the relevant period includes the two-year period prior to the filing of the Class and Collective Action Complaint and extends forward to the present. The class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

122.    Plaintiff brings Count IX, the IWPS claim arising out of Defendant's regular rate calculation policy resulting in unpaid overtime, as a class action under Fed. R. Civ. P. 23, on behalf of himself and the following class:

**COUNT IX - IWPS Unpaid Overtime Class**

All persons employed by Defendant and paid a direct cash wage of less than $7.25 per hour who worked more than 40 hours in any workweek during the relevant period.

123.    At present, the relevant period includes the two-year period prior to the filing of the Class and Collective Action Complaint and extends forward to the present. The class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

124.    Plaintiff brings Count X, the IWPS claim arising out of Defendant's blended rate overtime policy resulting in unpaid overtime, as a class action under Fed. R. Civ. P. 23, on behalf of himself and the following class:

---

**COUNT X - IWPS Blended Rate Class**

All persons employed by Defendant who were employed at two or more hourly rates, who worked more than 40 hours in any workweek during the relevant period and were paid a direct cash wage less than the weighted average of the two rates per hour.

---

125.     At present, the relevant period includes the two-year period prior to the filing of the Class and Collective Action Complaint and extends forward to the present. The class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

126.     Plaintiff brings Count XI, the Indiana Civil Rights claim arising out of Defendant's age discrimination, as a class action under Fed. R. Civ. P. 23, on behalf of himself and the following class:

---

**COUNT XI - ICRC Age Discrimination Class**

All persons employed by Defendant aged forty (40) years old or older who were denied or prevented from obtaining advancement or promotions that were instead given to employees aged younger than forty (40) years old.

---

127.     At present, the relevant period includes the two-year period prior to the filing of the Class and Collective Action Complaint and extends forward to the present. The class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court

128.    Plaintiff brings Count XII, the Indiana Civil Rights claim arising out of Defendant's age discrimination, as a class action under Fed. R. Civ. P. 23, on behalf of himself and the following class:

---

**COUNT XII - ICRC Age Discrimination Class**

All persons employed by Defendant aged 40 and older who suffered an adverse employment action because of their age.

---

129.    At present, the relevant period includes the two-year period prior to the filing of the Class and Collective Action Complaint and extends forward to the present. The class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court

130.    Plaintiff's Indiana state law claims (Counts VII-XII) described in detail below satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

131.    The class numbers in the hundreds, if not thousands, of persons. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice.

132.    There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members, which makes a Rule 23 class appropriate in this case. The questions of law and fact common to the classes arising from Defendant's actions include, without limitation, the following:

a.    Whether Defendant violated the IWPS when it failed to pay Plaintiff and class members for all hours worked due to the timeclock rounding system;

b.    Whether Defendant had policies and practices of failing to compensate Plaintiff and class members for all time worked through the use of a timeclock rounding system;

c.    Whether Defendant violated the IWPS when it calculated Plaintiff and class members' overtime pay as one and one-half times their sub-minimum direct cash wage for regular hours worked, instead of one and one-half times the regular minimum rate of $7.25 per hour;

d.    Whether Defendant violated the IWPS by paying Plaintiff and class members less than the "amount due" when it paid them less than $7.25 per hour for regular hours worked;

e.    Whether Defendant violated the IWPS by paying Plaintiff and class members less than the "amount due" when it paid them less than $10.875 per hour for overtime hours worked;

f.    Whether Defendant gave Plaintiff and class members advance notice of its use of a tip credit, and whether, as a result, said tip credit was legally valid;

g.    Whether Defendant violated the IWPS by paying Plaintiff and class members who were paid at more than one rate less than the "weighted" or "blended" rate for overtime hours worked,

h.    Whether Defendant violated the ICRC by disproportionately promoting younger employees and denying promotion to qualified employees who are forty (40) years old or older;

      i.     Whether Defendant violated the ICRC when subjected Plaintiff, and all other similarly situated employees, to an adverse employment action because of their age (40 years old or older); and

      j.     Whether Defendant acted in good faith.

133. The questions set forth above predominate over any questions affecting an individual person.

134. Here, a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims, because each question applies to each and every member of the proposed class.

135. Plaintiff's claims are typical of those of the respective classes because the potential class members have been employed in the same or similar positions as Plaintiff and were subject to the same or similar unlawful practices as Plaintiff.

136. A class action is the superior method for the fair and efficient adjudication of Plaintiff's claims. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

137. Plaintiff is an adequate representative because he is a member of each of the classes he seeks to represent, and his interests do not conflict with the interests of the members of those classes. The interests of the members of the classes will be fairly and adequately protected by Plaintiff and his undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation.

138.    Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in consistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## **ALLEGATIONS APPLICABLE TO ALL FLSA CLAIMS (COUNTS I-IV)**

139.    At all times material herein, Plaintiff and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

140.    The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

141.    Defendant is subject to the minimum wage and overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

142.    During all relevant times to this action, Defendant was the "employer" of Plaintiff, and all similarly situated employees within the meaning of the FLSA. 29 U.S.C. § 203(d).

143.    During all times relevant to this action, Plaintiff and all similarly situated employees were Defendant's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

144.    Plaintiff and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA. Accordingly, Plaintiff and all similarly situated employees must be paid minimum wage in accordance with 29 U.S.C. § 206.

145.    Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. 29 U.S.C. § 207(a).

146.    Although the FLSA contains some exceptions (and exemptions) from the minimum wage and overtime requirements, none of those exceptions (or exemptions) apply here.

147.    As discussed above, Plaintiff and all similarly situated employees are victims of uniform compensation policies.

148.    Plaintiff and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding the filing of the Class and Collective Action Complaint, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard, that its conduct was prohibited by the FLSA.

149.    Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant acted in good faith or with reasonable grounds in failing to pay minimum wage and overtime compensation, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

150.    As a result of these violations of the FLSA's minimum wage and overtime pay provisions, Defendant willfully withheld compensation from Plaintiff and all similarly situated employees. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendant is liable for the unpaid

minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## ALLEGATIONS APPLICABLE TO THE IWPS CLASS CLAIMS (COUNTS VII-X)

151.    At all times relevant, Plaintiff and the class members have been entitled to the rights, protections, and benefits provided under the Indiana Wage Payment Statute ("IWPS"), I.C. § 22-2-5-1, *et seq.*

152.    During all times relevant to this action, Defendant was the "employer" of Plaintiff and the class members within the meaning of the IWPS, or otherwise subject to its statutory provisions. I.C. § 22-2-5-1(a).

153.    During all times relevant to this action, Plaintiff and the class members were Defendant's "employees" within the meaning of the IWPS. I.C. § 22-2-5-1(a).

154.    Pursuant to IWPS, "[e]very person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee." I.C. § 22-2-5-1(a).

155.    Plaintiff and the class members are victims of uniform and employer-based compensation policies in violation of the IWPS.

156.    Plaintiff and the Class are entitled to damages equal to the amount of unpaid wages, along with an additional amount equal to two (2) times the amount of wages as liquidated damages, plus reasonable attorney's fees and costs. I.C. § 22-2-5-2.

## <u>COUNT I - FLSA (Unpaid Overtime & Minimum Wages)</u>

### Arising Out of Defendant's Unlawful Timeclock Rounding Policy

157.    Plaintiff re-alleges the allegations set forth above.

158.    Defendant violated the FLSA by failing to pay Plaintiff and all other similarly situated employees for all compensable hours worked at the legal and applicable wage rates for all hours worked in a workweek.

159.    Specifically, as discussed above, Defendant utilizes an unlawful timeclock rounding policy that, when combined with its attendance and/or disciplinary policies, forces employees to work off-the-clock without being paid at the legal and applicable wage rates for both straight and overtime hours.

160.    Defendant's practice was to unlawfully and willfully fail to properly pay its hourly employees for all hours worked.

WHEREFORE, on Count I of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

a.      Issue notice to all similarly situated employees of Defendant informing them of their right to file consents to join the FLSA portion of this action;

b.      Award Plaintiff and all similarly situated employees damages for unpaid minimum wages and unpaid overtime wages under 29 U.S.C. § 216(b);

c.      Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d.      Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

    e.      Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

    f.      Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

<u>**COUNT II - FLSA (Unpaid Minimum Wages)**</u>

**Arising Out of Defendant's Failure to Give Notice of Intent to Claim a Tip Credit**

161.    Plaintiff re-alleges the allegations set forth above.

162.    Defendant violated the FLSA by failing to pay Plaintiff and all others similarly situated minimum wages for all hours worked in a workweek.

163.    Specifically, Defendant paid Plaintiff and others similarly situated below the federal minimum wage rate without complying with the "tip credit" rules required for an employer to pay less than the federal minimum wage.

164.    In particular, Plaintiff and other similarly situated tipped employees were not informed, in advance of Defendant's use of the tip credit, of: (1) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendant, which amount may not exceed the value of the tips actually received the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

165.    Defendant failed to comply with the notification requirements set forth within the express language of the FLSA and supporting federal regulations. 29 U.S.C. § 203(m)(2); 29 C.F.R. § 531.59(b).

166.    As Defendant has failed to properly inform Plaintiff and other similarly situated tipped employees of the required tip credit provisions and are not entitled to claim a tip credit, Defendant have willfully violated state and/or federal law by failing and refusing to pay all minimum wages due and owing to Plaintiff and all other similarly situated employees.

167.    Defendant's practice was to unlawfully and willfully fail to comply with the requirements for its entitlement to a tip credit and therefore, Plaintiff and the similarly situated tipped employees were not properly paid minimum wages pursuant to the FLSA.

WHEREFORE, on Count II of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

a.    Issue notice to all similarly situated employees of Defendant informing them of their right to file consents to join the FLSA portion of this action;

b.    Award Plaintiff and all similarly situated employees damages for unpaid minimum wages under 29 U.S.C. § 216(b);

c.    Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d.    Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e.    Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

f.    Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

**COUNT III - FLSA (Unpaid Overtime Wages)**

**Arising Out of Defendant's Regular Rate Miscalculation Policy**

168.    Plaintiff re-alleges the allegations set forth above.

169.    Defendant violated the FLSA by failing to pay Plaintiff and all other similarly situated employees for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of 40 hours in a workweek.

170.    Specifically, the FLSA requires that employees are paid one and one-half times their "regular rate" of pay. The "regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

171.    Federal regulations provide that "a tipped employee's regular rate of pay includes the amount of tip credit taken by the employer ... Any tips received by the employee in excess of the tip credit need not be included in the regular rate." 29 C.F.R. § 531.60.

172.    In calculating Plaintiff's and other similarly situated employees' overtime pay, Defendant first subtracted the tip credit from the prevailing federal or state minimum wage. In other words, Defendant calculated the overtime rate by multiplying one and one-half times the lower direct (or cash) wage being earned. As a result, Plaintiff's and other similarly situated employees' overtime pay was not based on the proper regular rate of pay under the FLSA.

WHEREFORE, on Count III of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendant and prays this Court:

        a.    Issue notice to all similarly situated employees of Defendant informing them of their right to file consents to join the FLSA portion of this action;

b.    Award Plaintiff and all similarly situated employees damages for unpaid overtime wages under 29 U.S.C. § 216(b);

c.    Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d.    Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e.    Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

f.    Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

### COUNT IV - FLSA (Unpaid Overtime & Minimum Wages)

### Arising Out of Defendant's Blended Rate Miscalculation Policy

173.   Plaintiff re-alleges the allegations set forth above.

174.   Defendant violated the FLSA by failing to calculate Plaintiff's –and all similarly situated employees--blended, non-tipped, wages correctly.

175.   Defendant's wage policy and practice with regard to Plaintiff's and similarly situated employees calculation of non-tipped, blended wages resulted in the members of the collective systemically receiving incorrect overtime pay for all hours worked in violation of the FLSA.

176.   Defendant's practice was unlawful and a willful failure to comply with the FLSA's requirements.

WHEREFORE, on Count IV of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

a.    Issue notice to all similarly situated employees of Defendant informing them of their right to file consents to join the FLSA portion of this action;

b.    Award Plaintiff and all similarly situated employees damages for incorrect overtime blended, non-tipped wages under 29 U.S.C. § 216(b);

c.    Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d.    Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e.    Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b); and

f.    Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

## <u>COUNT V - ADEA</u>

### Arising Out of Defendant's Age Discrimination, Failure to Promote

177.    Plaintiff re-alleges the allegations set forth above.

178.    Plaintiff filed a timely class charge of discrimination before the Indiana Civil Rights Commission, which was cross filed with the EEOC, prior to initiating this lawsuit.

179.    On October 25, 2024, Plaintiff received his Right To Sue letter from the EEOC, in which the EEOC informed that it will not proceed further with its investigation and that it made no determination about whether further investigation would establish violations of the statute.

180.    Plaintiff therefore exhausted his and the collective's administrative remedies prior to initiating this lawsuit.

181.    Defendant's conduct in systematically denying promotions to qualified employees who are forty (40) years old or older is a violation of the ADEA.

182.    Defendant's conduct results in younger employees being entitled to better terms and conditions of employment, compared to their older counterparts.

183.    Defendant's violations of the ADEA have been knowing and willful, and as a direct and proximate cause of Defendant's discrimination, Plaintiff and similarly situated employees have suffered damages.

WHEREFORE, on Count V of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

a.    Issue notice to all similarly situated employees of Defendant informing them of their right to file consents to join the ADEA portion of this action;

b.    Find and declare that Defendant violated the Age Discrimination in Employe Act, 29 U.S.C. § 621 *et seq.*

c.    Award Plaintiff and all similarly situated employees compensatory damages, including back pay and front pay, in an amount according to proof, as well as punitive damages;

d.    Order Defendant to reinstate Plaintiff and other of Defendant's employees to the positions to which they were unlawfully denied;

e.    Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

f.    Award Plaintiff and all similarly situated employees attorneys' fees and costs; and

g.    Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

## **COUNT VI - ADEA**

### **Arising Out of Defendant's Age Discrimination**

184.    Plaintiff re-alleges the allegations set forth above.

185.    Plaintiff filed a timely class charge of discrimination before the Indiana Civil Rights Commission, which was cross filed with the EEOC, prior to initiating this lawsuit.

186.    On October 25, 2024, Plaintiff received his Right To Sue letter from the EEOC, in which the EEOC informed that it will not proceed further with its investigation and that it made no determination about whether further investigation would establish violations of the statute.

187.    Plaintiff therefore exhausted his and the collective's administrative remedies prior to initiating this lawsuit.

188.    Defendant specifically targeted employees forty (40) years or older for discipline up to and including termination, in a discriminatory manner compared to younger employees.

189.    The adverse action Plaintiff suffered in this case—his termination due to his age—was and is a violation of the ADEA.

190.    Defendant's violations of the ADEA have been knowing and willful, and as a direct and proximate cause of Defendant's discrimination, Plaintiff and similarly situated employees have suffered damages.

WHEREFORE, on Count VI of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

a.    Issue notice to all similarly situated employees of Defendant informing them of their right to file consents to join the ADEA portion of this action;

b.     Find and declare that Defendant violated the Age Discrimination in Employe Act, 29 U.S.C. § 621 *et seq.*

c.     Award Plaintiff and all similarly situated employees compensatory damages, including back pay and front pay, in an amount according to proof, as well as punitive damages;

d.     Order Defendant to reinstate Plaintiff and other of Defendant's employees to the positions to which they were unlawfully denied;

e.     Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

f.     Award Plaintiff and all similarly situated employees attorneys' fees and costs; and

g.     Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

## COUNT VII – Violation of the Indiana Wage Payment Statute, I.C. § 22-2-5-1, *et seq.*

### Arising Out of Defendant's Unpaid Minimum Wage

191.    Plaintiff re-alleges the allegations as set forth above.

192.    Defendant violated the Indiana Wage Payment Statute ("IWPS"), I.C. § 22-2-5-1, et seq., by failing to pay Plaintiff and all other similarly situated employees the amounts due for all wages to which they are entitled by operation of law.

193.    By law, Plaintiff and all other similarly situated employees are due to be paid $7.25 per hour for all regular time worked, that is, time up to 40 hours per week.

194.    Plaintiff and all other similarly situated employees seek to recover under the IWPS the difference between what they were paid by Defendant and the amount to which they were

entitled by law. Plaintiff and all other similarly situated employees do not seek recovery of any further amounts they may be owed under any collective bargaining agreement or any other potential source of entitlement.

195.  Specifically, as discussed above, Defendant utilizes an unlawful timeclock rounding policy that, when combined with its attendance and/or disciplinary policies, forces employees to work off-the-clock without being paid all amounts due.

196.  As a result of these practices, Defendant paid Plaintiff, and all similarly situated employees, less than the amount due under the law; that being $7.25 for all regular hours worked.

197.  Defendant's actions and/or omissions were not in good faith.

WHEREFORE, on Count VII of this Class and Collective Action Complaint, Plaintiff and the class members demand judgment against Defendant and prays this Court:

a.  Certify the state law claim set forth in Count VII above as a class action pursuant to Fed. R. Civ. P. 23;

b.  Award Plaintiff and the Class damages for the amount of unpaid wages due;

c.  Award Plaintiff and the Class liquidated damages under I.C. § 22-2-5-2;

d.  Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law;

e.  Award Plaintiff and the Class attorneys' fees and costs as allowed by I.C. § 22-2-5-2; and

f.  Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

## COUNT VIII – Violation of the Indiana Wage Payment Statute, I.C. § 22-2-5-1, *et seq*.

### Arising Out of Defendant's Unlawful Tip Credit

198.    Plaintiff re-alleges the allegations as set forth above.

199.    Defendant violated the Indiana Wage Payment Statute ("IWPS"), I.C. § 22-2-5-1, et seq., by failing to pay Plaintiff and all other similarly situated employees the amounts due for all wages to which they are entitled by operation of law.

200.    By law, Plaintiff and all other similarly situated employees are due to be paid $7.25 per hour for all regular time worked (time up to 40 hours per week), and $10.875 for all overtime worked (time in excess of 40 hours per week).

201.    Defendant paid Plaintiff and others similarly situated below the federal minimum wage rate without complying with the "tip credit" rules required for an employer to pay less than the federal minimum wage. See 29 U.S.C. § 203(m)(2); 29 C.F.R. § 531.59(b).

202.    In particular, Plaintiff and other similarly situated tipped employees were not informed, in advance of Defendant's use of the tip credit, of: (1) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendant, which amount may not exceed the value of the tips actually received the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

203.    Thus, by law, Defendant is not permitted to claim a tip credit, thereby bringing Plaintiff and all similarly situated employees' wages below the FLSA minimum for regular hours and overtime hours worked.

204. Plaintiff and all other similarly situated employees seek to recover under the IWPS the difference between what they were paid by Defendant and the amount to which they were entitled by law. Plaintiff and all other similarly situated employees do not seek recovery of any further amounts they may be owed under any collective bargaining agreement or any other potential source of entitlement.

205. As a result of these practices, Defendant paid Plaintiff and all similarly situated employees less than the amount due under the law; that being $7.25 for all regular hours worked, and $10.875 for all overtime hours worked.

206. Defendant's actions and/or omissions were not in good faith.

WHEREFORE, on Count VIII of this Class and Collective Action Complaint, Plaintiff and the class members demand judgment against Defendant and prays this Court:

a. Certify the state law claim set forth in Count VIII above as a class action pursuant to Fed. R. Civ. P. 23;

b. Award Plaintiff and the Class damages for unpaid wages due;

c. Award Plaintiff and the Class liquidated damages under I.C. § 22-2-5-2;

d. Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law;

e. Award Plaintiff and the Class attorneys' fees and costs as allowed by I.C. § 22-2-5-2; and

f. Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

**COUNT IX – Violation of the Indiana Wage Payment Statute, I.C. § 22-2-5-1, *et seq*.**

**Arising Out of Defendant's Unpaid Overtime**

207.    Plaintiff re-alleges the allegations as set forth above.

208.    Defendant violated the Indiana Wage Payment Statute ("IWPS"), I.C. § 22-2-5-1, et seq., by failing to pay Plaintiff and all other similarly situated employees the amounts due for all overtime wages to which they are entitled by operation of law.

209.    By law, Plaintiff and all other similarly situated employees are due to be paid $10.875 per hour for all overtime worked, that is, time in excess of 40 hours per week.

210.    Plaintiff and all other similarly situated employees seek to recover the difference between what Defendant paid them for overtime worked and the amount to which they were entitled by law, under the IWPS. Plaintiff and all other similarly situated employees do not seek recovery of any further amounts they may be owed under any collective bargaining agreement or any other potential source of entitlement.

211.    Specifically, as discussed above, Defendant calculates employees' overtime wages as one and one-half times their direct cash payment for regular hours worked after subtracting a tip credit, instead of one and one-half times the regular minimum rate of $7.25 per hour, resulting in said employees not being paid all amounts due for overtime hours worked.

212.    As a result of these practices, Defendant paid Plaintiff, and all similarly situated employees, less than the amount due under the law; that being $10.875 for all overtime worked.

213.    Defendant's actions and/or omissions were not in good faith.

WHEREFORE, on Count IX of this Class and Collective Action Complaint, Plaintiff and the class members demand judgment against Defendant and prays this Court:

a.      Certify the state law claim set forth in Count IX above as a class action pursuant to Fed. R. Civ. P. 23;

b.      Award Plaintiff and the Class damages for unpaid wages due;

c.      Award Plaintiff and the Class liquidated damages under I.C. § 22-2-5-2;

d.      Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law;

e.      Award Plaintiff and the Class attorneys' fees and costs as allowed by I.C. § 22-2-5-2; and

f.      Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

## COUNT X – Violation of the Indiana Wage Payment Statute, I.C. § 22-2-5-1, *et seq.*

### Arising Out of Defendant's Unlawful Blended Rate Calculations

214.    Plaintiff re-alleges the allegations as set forth above.

215.    Defendant violated the Indiana Wage Payment Statute ("IWPS"), I.C. § 22-2-5-1, et seq., by failing to pay Plaintiff and all other similarly situated employees the amounts due for all wages to which they are entitled by operation of law.

216.    By law, Plaintiff and all other similarly situated employees are due to be paid a blended rate for overtime which is equal to the weighted average of their wage rate when said employees are paid more than one regular rate for work performed for Defendant.

217.    Plaintiff and all other similarly situated employees seek to recover under the IWPS the difference between what they were paid by Defendant and the amount to which they were entitled by law. Plaintiff and all other similarly situated employees do not seek recovery of any

further amounts they may be owed under any collective bargaining agreement or any other potential source of entitlement.

218.    Specifically, as discussed above, Defendant's timeclock rounding policy resulted in blended rate employees' overtime wages as one and one-half times their weighted average rate to be less than what the weighted average should have been for the work performed, resulting in said employees not being paid all amounts due for overtime hours worked.

219.    As a result of these practices, Defendant paid Plaintiff, and all similarly situated employees, less than the amount due under the law; that being the weighted average for all overtime worked.

220.    As a result of these practices, Defendant paid Plaintiff, and all similarly situated employees less, than the amount due under the law.

221.    Defendant's actions and/or omissions were not in good faith.

WHEREFORE, on Count X of this Class and Collective Action Complaint, Plaintiff and the class members demand judgment against Defendant and prays this Court:

a.    Certify the state law claim set forth in Count X above as a class action pursuant to Fed. R. Civ. P. 23;

b.    Award Plaintiff and the Class damages for unpaid wages due;

c.    Award Plaintiff and the Class liquidated damages under I.C. § 22-2-5-2;

d.    Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law;

e.    Award Plaintiff and the Class attorneys' fees and costs as allowed by I.C. § 22-2-5-2; and

f.    Award Plaintiff and the Class such other relief as the Court deems fair and

equitable.

## **COUNT XI – Violation of the Indiana Civil Rights Law, I.C. § 22-9-2-1, *et seq*.**

### **Arising Out of Defendant's Unlawful Age Discrimination – Failure to Promote**

222.    Plaintiff re-alleges the allegations as set forth above.

223.    Defendant's conduct in systematically denying promotions to qualified employees who are forty (40) years old or older, is a violation of ICRC.

224.    Defendant's conduct results in younger employees being entitled to better terms and conditions of employment, compared to their older counterparts.

225.    Defendant's violation of Indiana law has been knowing and willful.

226.    As a result of these discriminatory practices, Plaintiff and all similarly situated employees have suffered damages.

WHEREFORE, on Count XI of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

a.    Certify the state law claim set forth in Count XI above as a class action pursuant to Fed. R. Civ. P. 23;

b.    Find and declare that Defendant violated the Indiana Civil Rights Law, I.C. § 22-9-2-1, *et seq*.

c.    Award Plaintiff and all similarly situated employees compensatory damages, including back pay and front pay, in an amount according to proof, as well as punitive damages;

d.    Order Defendant to reinstate Plaintiff and other of Defendant's employees to the positions to which they were unlawfully denied;

e.  Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

f.  Award Plaintiff and all similarly situated employees attorneys' fees and costs; and

g.  Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

## COUNT XII – Violation of the Indiana Civil Rights Law, I.C. § 22-9-2-1, *et seq*.

### Arising Out of Defendant's Unlawful Age Discrimination

227.  Plaintiff re-alleges the allegations as set forth above.

228.  Defendant specifically targeted employees forty (40) years old or older for discipline up to and including termination, in a discriminatory manner compared to younger employees.

229.  The adverse action Plaintiff suffered in this case—his termination due to his age—was and is a violation of the ICRC.

230.  Defendant's violation of Indiana law has been knowing and willful.

231.  As a result of these discriminatory practices, Plaintiff and all similarly situated employees have suffered damages.

WHEREFORE, on Count XII of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

a.  Certify the state law claim set forth in Count XI above as a class action pursuant to Fed. R. Civ. P. 23

b.  Find and declare that Defendant violated the Indiana Civil Rights Law, I.C. § 22-9-2-1, *et seq*.

c.      Award Plaintiff and all similarly situated employees compensatory damages, including back pay and front pay, in an amount according to proof, as well as punitive damages;

d.      Order Defendant to reinstate Plaintiff and other of Defendant's employees to the positions to which they were unlawfully denied;

e.      Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

f.      Award Plaintiff and all similarly situated employees attorneys' fees and costs; and

g.      Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

## COUNT XIII – Violation of the Indiana Wage Payment Statute, I.C. § 22-2-5-1, *et seq*.

### Arising Out of Defendant's Unpaid Promotion Wages

232.    Plaintiff re-alleges the allegations as set forth above.

233.    Defendant violated the Indiana Wage Payment Statute ("IWPS"), I.C. § 22-2-5-1, *et seq*., by failing to pay Plaintiff the amounts due for all straight time and overtime wages to which he was entitled by operation of law for the period of time that Plaintiff worked in the promoted position of Dealer Training Tables.

234.    Plaintiff applied for and was hired for the promoted position, and was promised an increase in his hourly wage, which also would have resulted in an increase in his overtime rate.

235.    As alleged above, Plaintiff performed work for roughly four (4) weeks in the Dealer Training Tables position but was not paid the promised increased wage.

236.    Plaintiff's position as the Dealer Training Tables required him to perform new and additional duties as Plaintiff performed in his other positions.

237.    Plaintiff therefore seeks to recover the difference between what he was paid by Defendant for straight time and overtime worked and the amount to which he was entitled by law under the IWPS based upon the increased rate that accompanied the promotion to Dealer Training Tables. Plaintiff does not seek recovery of any further amounts he may be owed under any collective bargaining agreement or any other potential source of entitlement.

238.    Defendant's actions and/or omissions in failing to pay Plaintiff his increased wages were not in good faith.

239.    At this time, Count XIII is brought only by Plaintiff in his individual capacity, and not as a class or collective claim.

WHEREFORE, on Count XIII of this Class and Collective Action Complaint, Plaintiff demands judgment against Defendant and prays this Court:

a.    Award Plaintiff damages for unpaid wages due, both straight time and overtime;

b.    Award Plaintiff liquidated damages under I.C. § 22-2-5-2;

c.    Award Plaintiff pre-judgment and post-judgment interest as provided by law;

d.    Award Plaintiff attorneys' fees and costs as allowed by I.C. § 22-2-5-2; and

e.    Award Plaintiff such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all issues so triable.

Dated: January 21, 2025.                    Respectfully submitted,
                                            ROLLIE CANNON

ONE OF PLAINTIFF'S ATTORNEYS

Kevin K. McCormick                  Julia M. Keenan (*pro hac forthcoming*)
SDHMR Law Group LLP                 Spitzer Law P.C.
215 South 10th Street               1585 N. Milwaukee Ave., Ste. 114
Noblesville, IN 46060               Libertyville, IL 60048
317.550.5339                        (224) 456-5635
kevin@sdhmrlaw.com                  julia@spitzerlawpc.com
Indiana Atty. No. 38019-45          Admitted only in Illinois - 6336156
Illinois Atty. No. 6286831